**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| VANESSA TURNER,<br>*Plaintiff*,<br><br>v.<br><br>AMERICAN EXPRESS COMPANY, *et al.*,<br>*Defendants*. | Civil Action No.<br>25-cv-2365-ABA |

**MEMORANDUM OPINION**

Plaintiff Vanessa Turner has sued her former employer, American Express Travel Related Services Company, Inc., and its parent company, American Express Company (collectively, "Amex" or "Defendants"), asserting various federal and state claims arising out of alleged discrimination and retaliation based on disability. In response, Amex filed a motion to compel arbitration and dismiss the amended complaint or, alternatively, to stay proceedings. After briefing on that motion was completed, Ms. Turner filed a motion for leave to file a surreply. For the reasons that follow, Defendants' motion to compel arbitration will be granted and the case will be stayed pending arbitration. Ms. Turner's motion for leave to file a surreply will be denied.

## I. BACKGROUND[1]

Ms. Turner was employed by Defendant American Express Travel Related Services Company, Inc. beginning in or around November 28, 2022. ECF No. 12 ¶ 8. On

[1] In deciding a motion to compel arbitration, "this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party." *Caire v. Conifer Value Based Care, LLC*, 982 F. Supp. 2d. 582, 589 (D. Md. 2013) (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007)). "In order to effectively assess the merits of this

December 29, 2022, Ms. Turner signed a "U.S. Employment Arbitration Acknowledgement Form" (the "Acknowledgement Form"), which states that she read the American Express U.S. Employment Arbitration Policy (the "Arbitration Policy" or the "Policy") and understood that arbitration is the final and exclusive forum for all employment-related disputes. ECF No. 16-2 at 24.

Under the Arbitration Policy, arbitration is the final and exclusive forum for all covered employment-related disputes, and the parties explicitly waive their right to proceed in federal or state court unless agreed by both parties. ECF No. 16-2 at 6–7. Covered disputes include claims based on discrimination or harassment based on disability, tortious acts (such as negligent hiring or supervision, intentional or negligent infliction of emotional distress, and fraudulent inducement), wrongful, retaliatory, or constructive discharge, breach of contract, disputes regarding benefits, and any other claim under the Americans with Disabilities Act ("ADA") and other related federal, state, or local statutes. *Id.* at 7–8. Employees are given the option to complete an Arbitration Opt-Out Form within forty-five days of the start of their employment and would then not be covered by the Arbitration Policy. *Id.* at 7. The Arbitration Policy is governed by the laws of the State of New York. *Id.* at 18.

Ms. Turner contends that she has been diagnosed with a medical condition that qualifies her as an individual with disabilities as defined in the ADA and the Maryland Fair Employment Practices Act ("MFEPA"). ECF No. 12 ¶¶ 12–13. On or about May 16, 2023, Ms. Turner disclosed her diagnosis to her then-supervisor and requested six months of medical leave as an accommodation. *Id.* ¶¶ 15–16. In her request, she

---

motion, however, the court must consider documents outside the pleadings." *Shaffer v. ACS Gov't Servs., Inc.*, 321 F. Supp. 2d 682, 683–84 (D. Md. 2004).

allegedly expressed her willingness to take unpaid leave or consider alternative accommodations, such as flexible scheduling or a gradual return-to-work plan. *Id.* ¶ 16. Amex approved Ms. Turner for six weeks of leave allegedly based on a company policy. *Id.* ¶ 18. Ms. Turner contends that Amex "imposed unnecessary and burdensome documentation requirements, treated mental-health conditions less favorably than physical conditions, and failed to maintain the confidentiality of Plaintiff's medical information." *Id.* ¶ 20.

On July 28, 2023, Defendant American Express Company allegedly informed Ms. Turner that her leave request was denied for July 7, 2023 through August 14, 2023. *Id.* ¶ 22. At some point in July 2023, Ms. Turner's pay and benefits stopped. *Id.* ¶ 26. On August 7, 2023, Defendant American Express Company reiterated this denial and requested a status update on her medical release. *Id.* ¶ 22. Ms. Turner contends that she requested an extension but did not hear back for a month. *Id.*

In September 2023, Ms. Turner was reassigned to a new supervisor who allegedly did not receive any information on Ms. Turner's ongoing requests for leave, and the supervisor with whom she had previously been coordinating her leave failed to respond to communications. *Id.* ¶¶ 23–24. On October 6, 2023, Ms. Turner's employment was terminated. *Id.* ¶ 26.

Ms. Turner initiated this case, *pro se*, on July 21, 2025, ECF No. 1, and filed an amended complaint on September 18, 2025, ECF No. 12. In the amended complaint, Ms. Turner asserts 16 claims: ADA (disability discrimination, failure to accommodate, and retaliation), ERISA benefits, MFEPA (disability discrimination, retaliation, and hostile work environment), aiding and abetting, wrongful discharge (public policy), intentional infliction of emotional distress, negligent hiring, training, and supervision, constructive

discharge, fraudulent misrepresentation/concealment, civil conspiracy, breach of contract, and physical injury/exacerbation of medical conditions. ECF No. 12 at 8–19.

On October 9, 2025, Amex filed a motion to compel arbitration and to either dismiss or stay the proceedings. ECF No. 16. In its motion, Amex argues that the Arbitration Policy is valid and enforceable and that Ms. Turner's claims are covered by the Policy. ECF No. 16-1 at 5–8.

Ms. Turner filed an opposition to the motion, arguing that the Arbitration Policy is invalid and unenforceable because she could not knowingly and voluntarily consent; Defendants did not sign the Acknowledgement Form and thus there is no mutual assent; she did not receive the Policy until a month into her employment, and therefore her signature does not constitute informed consent; the Policy is ambiguous in its identification of the contracting party; and the Policy is illusory and unconscionable. ECF No. 17.

Amex filed a reply brief addressing each of Ms. Turner's arguments. ECF No. 18. Ms. Turner then filed a motion for leave to file a surreply, contending that Amex's reply brief raised new legal arguments that were not included in the original motion. ECF No. 20. Amex opposes the motion for leave to file a surreply, ECF No. 21, and Ms. Turner filed a reply in support of her motion, ECF No. 22.[2]

[2] "'Surreplies are highly disfavored in this District,' and may only be filed with the Court's permission." *Medish v. Johns Hopkins Health Sys. Corp.*, 272 F. Supp. 3d 719, 722 (D. Md. 2017) (quoting *Roach v. Navient Sols., Inc.*, 165 F. Supp. 3d 343, 351 (D. Md. 2015)). "Surreplies, however, 'may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply.'" *Id.* (quoting *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003)). Plaintiff's proposed surreply clarifies or restates arguments already made in her opposition brief. Further, there is no indication new arguments were presented in

## II. STANDARD OF REVIEW

"[M]otions to compel arbitration exist in the netherworld between a motion to dismiss and a motion for summary judgment." *Shaffer v. ACS Gov't Servs., Inc.*, 321 F. Supp. 2d 682, 683 (D. Md. 2004). A motion to compel arbitration is treated as one for summary judgment where "the formation or validity of the arbitration agreement is in dispute," *Caire v. Conifer Value Based Care, LLC*, 982 F. Supp. 2d. 582, 589 (D. Md. 2013), or where "the court must consider documents outside the pleadings," *Shaffer*, 321 F. Supp. 2d at 683–84; *accord PC Constr. Co v. City of Salisbury*, 871 F. Supp. 2d 475, 477 (D. Md. 2012). *See also Galloway v. Santander Consumer USA, Inc.,* 819 F.3d 79, 85, 85 n.3 (4th Cir. 2016) (quoting *Chorley Enters. v. Dickey's Barbecue Rests.*, 807 F.3d 553, 564 (4th Cir. 2015)) (stating that, under the Federal Arbitration Act, a party seeking a jury trial "must show genuine issues of material fact regarding the existence of an agreement to arbitrate," a standard that is "akin to the burden on summary judgment").

A defendant who seeks to compel arbitration bears the burden of establishing the existence of a binding contract to arbitrate the dispute. *Minnieland Priv. Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 867 F.3d 449, 456 (4th Cir. 2017). Arbitration is "strictly a matter of consent"; there is no presumption in favor of arbitration unless the defendant can show that there was an enforceable agreement. *Marshall v. Georgetown Mem'l Hosp.*, 112 F.4th 211, 217–18 (4th Cir. 2024) (citing *Lamps Plus, Inc. v. Varela,* 587 U.S. 176, 184 (2019); *Raymond James Fin. Servs. Inc. v. Cary*, 709 F.3d 382, 385–86 (4th Cir. 2013)).

---

Defendants' reply brief that warrant a surreply. Therefore, Plaintiff's motion for leave to file a surreply will be denied.

## III. DISCUSSION

### A. Did the parties form an agreement to arbitrate?

"Whether an agreement to arbitrate was formed is . . . a question of ordinary state contract law principles." *Marshall*, 112 F.4th at 218 (quoting *Rowland v. Sandy Morris Fin. & Est. Plan. Servs., LLC*, 993 F.3d 253, 258 (4th Cir. 2021)). Under the Federal Arbitration Act ("FAA"), agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336 (2011). Although the Arbitration Policy's choice-of-law provision provides for the application of New York law, "because application of a choice-of-law provision presupposes that the parties have formed a binding arbitration agreement," in determining whether an arbitration provision is enforceable, the Court must apply the forum's state's choice-of-law rules to determine which state's laws apply to decide whether a contract was formed. *Bailey v. Mercury Fin., LLC*, 694 F. Supp. 3d 613, 621–22 (D. Md. 2023) (citing *Noohi v. Toll Bros., Inc.*, 708 F.3d 599, 607 (4th Cir. 2013); *Johnson v. Cont'l Fin. Co., LLC*, 690 F. Supp. 3d 520, 525 (D. Md. 2023); *Francis v. Allstate Ins. Co.*, 709 F.3d 362, 369 (4th Cir. 2013)).

Plaintiff and Defendants refer to Maryland law rather than New York law for their arguments regarding the validity and enforceability of the Arbitration Policy. *See* ECF No. 16-1 at 5–6 (arguing that Maryland law supports the validity of the Policy); ECF No. 17-1 ¶¶ 13, 20 (referring to Maryland case law). Under Maryland's choice of law rules, "the law of the jurisdiction where the contract was made controls its validity and construction." *Kramer v. Bally's Park Place, Inc.*, 311 Md. 387, 390 (1988). As it appears to be uncontested that Ms. Turner resided in Maryland in December 2022 when

she signed the contract and the parties do not dispute that Maryland law controls, the Court will apply Maryland law, rather than New York law, to determine whether there is a valid and enforceable arbitration agreement.

Under Maryland law, in order to have a valid agreement, there must be (1) an offer to enter into a contract, (2) acceptance of the offer, and (3) consideration. *See Shaffer*, 321 F. Supp. 2d at 686. Ms. Turner contends that the Arbitration Policy fails on the latter two requirements for a variety of reasons, each of which fails.

**i. Assent/Agreement**

Ms. Turner contends that there was no mutual assent to the Arbitration Policy because (1) she signed the Acknowledgement Form "under duress and without any meaningful opportunity to negotiate" because she believed that she would be terminated if she did not do so, (2) she did not receive the Policy until a month into her employment, (3) she did not knowingly assent because her "disabilities directly affected her brain function, comprehension, and decision-making during onboarding," and (4) Defendants did not sign the arbitration agreement themselves. ECF No. 17-1 at 8–11.

"When a party attacks the validity of a contract as invalid under fraud, duress, coercion, mistake, undue influence, or incompetence, normally that party bears the burden of proof." *Cannon v. Cannon*, 384 Md. 537, 554 (2005) (citations omitted). "In order to establish duress, there must be a wrongful act which deprives an individual of the exercise of his free will." *Eckstein v. Eckstein*, 38 Md. App. 506, 512 (1978) (citations omitted). Ms. Turner's vague assertions of "economic duress" and general statements that refusal to sign the Acknowledge Form would lead to her termination are insufficient to establish duress. *See* ECF No. 17-1 at 11. Ms. Turner does not allege facts or point to any evidence to show that Amex took some type of "wrongful act" to deprive her of her

free will. She contends that the fact that Amex did not provide her with the Policy until a month into her employment also contributed to the duress she alleges. But her offer letter specifically mentioned that she would be "subject to the terms of the" Arbitration Policy, which "provides that arbitration is the final, exclusive and required forum for the resolution of all employment-related disputes" and which would be provided to her during the first week of her employment and could be provided sooner if requested. *See* ECF No. 16-2 at 22. Therefore, the Court need not consider whether providing the Policy a month into employment would constitute duress, as Ms. Turner was put on notice that there was an Arbitration Policy prior to her accepting her employment and was given the opportunity to review the Policy prior to her employment if she wished. Finally, the second and third pages of the Arbitration Policy explicitly provide a carve-out for employees who, instead of signing the Acknowledgement Form, complete an Arbitration Opt-Out Form within forty-five days of starting their employment. *See id.* at 7–8. The fact that employees are given the option to opt out further undermines the assertion of duress.

Next, "the law presumes that every [person] is sane and possesses the requisite mental capacity to execute the instrument attacked . . . . Testimony in order to be legally sufficient to overthrow the presumption in favor of a person's sanity and capacity, must be directed to the date of the execution of the paper attacked, and must tend to show that [s]he was incompetent at that particular time." *Gordon v. Rawles*, 201 Md. 503, 512–13 (1953); *see Cannon*, 384 Md. at 554–55. Ms. Turner's contention that she was incapable of consenting to the Arbitration Policy while asserting a breach of contract claim based on her employment contract and handbook that she signed around the same time appears, without more, to be contradictory. *See* ECF No. 17-1 at 9; ECF No. 12

¶¶ 128–135. Further, Ms. Turner's amended complaint and opposition to the motion do not specify when she was diagnosed with her disability and specifically whether her disability existed at the time that she signed the Acknowledgement Form in order to undermine the validity of her signature. Given that she alleges that she did not tell Amex about her disability until May 2023 (approximately six months after the start of her employment and five months after signing the Acknowledgement Form) and she does not otherwise specify the date of the onset or diagnosis of her disability, it is unclear to the Court whether this was a disability that she had at the time of signing the Acknowledgement Form that could undermine her capacity to understand the Policy or if this was a disability that occurred afterwards. *See* ECF No. 12 ¶¶ 8, 13, 15. Ms. Turner has not met her burden of establishing that she lacked the capacity to consent to the Arbitration Policy.

Finally, Ms. Turner's contention that mutual assent is lacking because Amex did not sign the Acknowledge Form misapprehends contract law. A valid contract can be created via an offer and acceptance; signatures on a document help to prove acceptance at a later date, but once an offeree (here, Ms. Turner) accepts an offer, the initial offeror (here, Amex) is bound to the terms of the offer. It is uncontested that Amex provided the Arbitration Policy and Acknowledgement Form and thus constitutes the offeror and the terms of the Policy explicitly bind Amex. *See* ECF No. 16-2 at 6.

Therefore, Amex has sufficiently established mutual assent of the Arbitration Policy.

**ii. Consideration**

"Consideration is established by a showing of either detriment to the promisee or benefit to the promisor." *Shaffer*, 321 F. Supp. 2d at 686 (quoting *Nat'l Mortg.*

*Warehouse, LLC v. Bankers First,* 190 F. Supp. 2d 774, 784 (D. Md. 2002)). Under Maryland law, "the fact that two parties agreed to forfeit their right to seek legal relief in the courts and, instead, bind themselves to arbitrate their disputes, constitutes consideration for the arbitration agreement." *Id.* (citing *Johnson v. Circuit City Stores*, 148 F.3d 373, 378–79 (4th Cir. 1998)). The Arbitration Policy explicitly "requir[es] both parties to resolve all employment-related disputes . . . through final and binding arbitration . . . and the parties mutually waive their right to a trial before a judge or jury in federal or state court in favor of arbitration." ECF No. 16-2 at 6. Therefore, the Policy is supported by sufficient consideration.

**iii. Illusory Contracts**

Under Maryland law, "a promise to arbitrate is illusory—and thus cannot constitute the consideration necessary to support a binding contract—if [one party] reserves the right to alter, amend, modify, or revoke the Arbitration Policy . . . at any time with or without notice." *Trimble v. Entrada, Inc.*, -- F.4th --, 2026 WL 2317837, at *5 (4th Cir. Aug. 11, 2026) (quoting *Coady v. Nationwide Motor Sales Corp.*, 32 F.4th 288, 292 (4th Cir. 2022)); *see also Cheek v. United Healthcare of Mid-Atl., Inc.*, 378 Md. 139, 149–50 (2003) ("An 'illusory promise' appears to be a promise, but it does not actually bind or obligate the promisor to anything. An illusory promise is composed of 'words in a promissory form that promise nothing.'") (quoting Corbin on Contracts § 5.28 (2003)). An agreement is not illusory, however, where sufficient limitations are placed on the change-in-terms clause, such as a limit on how often the party can amend the policy and setting a specific annual date for any amendments, *see Holloman v. Circuit City Stores, Inc.*, 391 Md. 580, 586, 592 (2006), or where the clause requires that the party give *prior* notice of an amendment and provide the non-modifying party

with time to cancel the contract prior to the implementation of the amend, *see DIRECTV, Inc. v. Mattingly*, 376 Md. 302, 306, 315–16 (2003). *See also Johnson v. Cont'l Fin. Co., LLC*, 131 F.4th 169, 179–181 (4th Cir. 2025) (explaining that, unlike *Holloman* and *DIRECTV*, a vague notice requirement that does not give the other side a chance to end the contract prior to the change taking place renders the contract illusory).

The Arbitration Policy provides that Amex "reserves the right to alter, amend, modify, or revoke this Policy with notice to employees, except that all Demands filed with the Company at the time such written notice issues shall be subject to the Policy then in effect." ECF No. 16-2 at 17. The Acknowledgment Form signed by Ms. Turner states, "I further understand and agree that American Express may amend or modify the Policy in the future with notice to me and that I will be bound by such modifications." *Id.* at 24. Ms. Turner contends that these provisions are akin to those in *Johnson* and thus render the agreement illusory. ECF No. 17-1 at 13–16. Amex contends that the provision is sufficiently limited and more akin to *Holloman* and *DIRECTV* as it cannot amend the Policy without providing notice and any modification cannot be applied to any dispute already initiated, thus preventing Amex from changing the rules during an active dispute. ECF No. 18 at 9.

The change-in-term clause here falls in between that in *Johnson* and in *Holloman*. Unlike in *Johnson*, the clause does not just require "notice [as] required by law" without limitations. 131 F.4th at 181. But unlike *Holloman* and *DIRECTV*, the clause does not explicitly require *advance* notice of changes and does not provide for a renewed period in which employees may opt out of the amendment. *Id.* at 180–81. The clause does, however, impose limitations on Amex's ability to amend the Policy: it

requires any amendment to be in writing, requires written notice be given to all employees, and limits the application of any amendment to prospective claims rather than any demands for arbitration filed prior to said amendment. ECF No. 16-2 at 17–18. Because sufficient limitations are set on Amex's ability to amend the Policy and apply any amended Policy, the Policy is not illusory.

#### iv. Ambiguity

Ms. Turner contends that the Arbitration Policy is ambiguous as it "purports to bind 'American Express and its subsidiaries' collectively, without identifying which entity is a contracting party or which entity would be accepting Plaintiff's assent if a property valid arbitration agreement was executed." ECF No. 17-1 at 11 (emphasis omitted). The Policy clearly identifies "American Express Company and its subsidiaries." ECF No. 16-2 at 6. Further, Ms. Turner's amended complaint and opposition to the motion both rely on her understanding that American Express Company is the parent company of her employer, American Express Travel Related Services Company, Inc. *See* ECF No. 12 ¶¶ 11, 22, 27, 28; ECF No. 17-1 at 2–4. Therefore, Ms. Turner understood that her employer and its parent company were subject to the Policy, undermining any ambiguity argument.

### B. Was the arbitration agreement unconscionable?

Given that "[a]n arbitration agreement is 'valid and enforceable, and is irrevocable, *except* upon grounds that exist at law or in equity for the revocation of a contract,'" under Maryland law "'contract defenses, such as . . . unconscionability, may be asserted in court to invalidate an arbitration agreement.'" *Rankin v. Brinton Woods of Frankford, LLC*, 241 Md. App. 604, 620–21 (2019) (quoting Md. Code Ann., Cts. & Jud. Proc. § 3-206; *Henry v. Gateway, Inc.*, 187 Md. App. 647, 658 (2009)). The party

opposing arbitration has the burden to demonstrate that the arbitration agreement was unconscionable. *Id.* at 621 (citing *Henry*, 187 Md. App. at 658).

"There are two aspects of unconscionability—procedural and substantive—both of which must exist for a court to decline to enforce an arbitration provision." *Id.* at 621–22 (citing *Doyle v. Fin. Am., LLC*, 173 Md. App. 370, 383 (2007)). "Procedural unconscionability 'concerns the process of making a contract and includes such devices as the use of fine print and convoluted or unclear language, as well as deficiencies in the contract formation process, such as deception or a refusal to bargain over contract terms.'" *Id.* at 622 (quoting *Stewart v. Stewart*, 214 Md. App. 458, 477 (2013)). "Substantive unconscionability, on the other hand, 'refers to contractual terms that are unreasonably or grossly favorable to the more powerful party and includes terms that attempt to alter in an impermissible manner fundamental duties otherwise imposed by the law.'" *Id.* (quoting *Stewart*, 214 Md. App. at 477–78).

Ms. Turner contends that the Arbitration Policy is procedurally unconscionable because "[t]he policy was presented electronically without explanation; Plaintiff had no opportunity to negotiate; [t]he 45-day opt-out was illusory because exercising it would have resulted in termination as Plaintiff was told; and Plaintiff sought assistance and was not accommodated." ECF No. 17-1 at 12. She contends that it is substantively unconscionable because "[o]nly the Company may modify, amend, or revoke the policy; [t]he policy strips employees of access to a judicial forum; and [t]erms are entirely one-sided in favor of the employer." *Id.*

If a plaintiff "offers no allegations or evidence that [s]he in fact attempted to negotiate the Agreement but was denied the opportunity to do so based on an imbalance in bargaining power," she cannot validly assert lack of an opportunity to negotiate as a

basis to find an agreement procedurally unconscionable. *Brown v. Brown's Md. Motors, Inc.*, 607 F. Supp. 3d 620, 631 (D. Md. 2022). Generalized contentions are insufficient to establish procedural unconscionability. *Meadows v. Cebridge Acquisition, LLC*, 132 F.4th 716, 730 (4th Cir. 2025) (holding that the "generalized contention [regarding literacy levels within the state] is irrelevant here, where none of the plaintiffs claim to struggle with literacy") (citing *New v. GameStop, Inc.*, 232 W. Va. 564, 578 (2013), which held that procedural unconscionability did not apply where the plaintiff presented no evidence that she was incapable of due to age, literacy, or lack of sophistication to understand). Ms. Turner does not contend that she attempted to negotiate the Arbitration Policy and was denied. She also does not provide any evidence of the opt-out option being illusory or allege that an agent of Amex told her that she would be fired if she did not sign the Acknowledgement Form. Finally, she does not allege that she was rushed into signing the Policy and was not given an opportunity to consult with someone, such as an attorney, before she signed if she chose to do so. The generalized contention that Amex failed to explain the terms to her alone is insufficient for procedural unconscionability.

Even if Ms. Turner had established that the Policy was procedurally unconscionable, she has failed to show that it is substantively unconscionable. "To demonstrate substantive unconscionability, Plaintiff must show that the Agreement 'was such that no man in his senses and not under delusion would make [it] on the one hand, and [ ] no honest and fair man would accept [it] on the other.'" *Brown*, 607 F. Supp. 3d at 631 (quoting *Walther v. Sovereign Bank*, 386 Md. 412, 426 (2005)). "Because substantive unconscionability looks to the terms of the bargain, it must typically be

established based on 'the actual terms of the contract.'" *Id.* (quoting *Doyle v. Fin. Am., LLC*, 173 Md. App. 370, 383 (2007)).

As explained above, Amex's ability to amend or modify the Policy does not render it illusory and thus also does not render it substantively unconscionable. Additionally, the fact that, as an arbitration agreement, the Policy strips the parties of the right to use a judicial forum also cannot serve as the basis for it to be found substantively unconscionable because otherwise *all* arbitration agreements would be invalidated, which is clearly contrary to the FAA. Finally, Ms. Turner's broad allegation that the terms are one-sided fails to meet her burden of demonstrating unconscionability. The Policy binds both the employees and Amex, it provides step-by-step instructions on the arbitration process, and it provides for the ability to opt-out of the Policy as a whole. Therefore, Ms. Turner has failed to establish that the Policy is substantively unconscionable.

## IV. CONCLUSION

For the aforementioned reasons, Defendants' motion to compel arbitration will be granted. The case will be stayed pending arbitration. Plaintiff's motion for leave to file a surreply will be denied. A separate order follows.

Date: September 14, 2026

*/s/*
Adam B. Abelson
United States District Judge